UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2021 AUG 31  PM 4: 42

CLERK

BY____LAW____

DEPUTY CLERK

DJ'S TREE SERVICE & LOGGING, INC.,      )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )        Case No. 2:20-cv-00217
                                         )
BANDIT INDUSTRIES, INC. and             )
ANDERSON EQUIPTMENT                      )
COMPANY (NY), INC.,                      )
                                         )
        Defendants.                      )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND,
ORDERING CLAIMS AGAINST DEFENDANT ANDERSON SEVERED,
GRANTING DEFENDANT ANDERSON'S MOTION TO DISMISS PURSUANT
TO THE FORUM SELECTION CLAUSE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT BANDIT'S MOTION TO DISMISS THE
AMENDED COMPLAINT**
(Docs. 5, 20, & 21)

Plaintiff DJ's Tree Service & Logging, Inc. brings this suit against Defendants

Bandit Industries, Inc. ("Bandit") and Anderson Equipment Company (NY), Inc.

("Anderson") for breach of express warranties, violation of the Vermont Consumer

Protection Act (the "VCPA"), and common law fraud arising out of the sale of equipment

for use by Plaintiff in its business. Pending before the court is Defendant Anderson's

motion to dismiss or, in the alternative, to transfer venue (Doc. 5), Defendant Bandit's

motion to dismiss (Doc. 20),[1] and Plaintiff's motion for leave to amend. (Doc. 21.)

**I.      Procedural Background.**

On December 29, 2020, Defendant Anderson filed a motion to dismiss under Fed.

R. Civ. P. 12(b)(6) or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a)

---

[1] Plaintiff has not filed an opposition to Defendant Bandit's motion to dismiss, however, "the lack of opposition does not, without more, justify dismissal." *James v. John Jay Coll. of Crim. Just.*, 776 F. App'x 723, 724 (2d Cir. 2019) (summary order) (citing *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2010)).

based on a forum selection clause contained in the "Equipment Sales Agreement" (the "Agreement") between Defendant Anderson and Plaintiff. On January 26, 2021, Defendant Bandit filed a motion to dismiss for lack of personal jurisdiction, or in the alternative, for failure to state a claim. On February 4, 2021, Plaintiff filed a motion for leave to amend the Complaint.

On June 29, 2021, the court ordered the parties to provide supplemental briefing regarding whether Defendant Bandit was subject to a forum selection clause contained in the Agreement on the ground that it was part of a larger contractual relationship between Plaintiff and Defendant Anderson. The parties completed supplemental briefing on July 27, 2021, at which time the court took the pending motions under advisement.

Plaintiff is represented by Norman R. Blais, Esq., and Paul R. Morwood, Esq. Defendant Bandit is represented by Mark F. Werle, Esq. and Francesca Bove, Esq. Defendant Anderson is represented by Mary Ann DiIanni, Esq., and Matthew S. Borick, Esq.

## II. Whether to Grant Leave to Amend.

After both Defendants filed their respective motions to dismiss, Plaintiff cross moved for leave to amend. Defendant Anderson opposes Plaintiff's motion on the ground that amendment would be futile, while Defendant Bandit "takes no position on the merits of [P]laintiff's motion[.]" (Doc. 26 at 1.)

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Plaintiff's Proposed Amended Complaint removes facts regarding venue, adds approximate dates for alleged facts, and supplies limited additional factual allegations. The court declines to rule on the futility of Plaintiff's claims against Defendant Anderson because those claims must be dismissed pursuant to the forum selection clause. With regard to Plaintiff's remaining claims against Defendant Bandit, because leave to amend

2

should be freely given and because Defendant Bandit does not oppose the motion, Plaintiff's motion for leave to amend is GRANTED. Defendant Bandit's motion dismiss will therefore be decided in the context of Plaintiff's Amended Complaint. *See Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012) ("Where a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.") (internal quotation marks omitted).

## III.   The Amended Complaint's Factual Allegations.

Plaintiff is a corporation organized and existing in the State of Vermont with its principal place of business in Colchester, Vermont. Defendant Anderson is a corporation organized and existing in the State of Pennsylvania and is a retail seller of industrial equipment. Defendant Anderson owns, operates, and maintains a retail store in East Montpelier, Vermont and, at all relevant times, was an authorized dealer for and "was acting as an agent of" Defendant Bandit. (Doc. 21-2 at 2, ¶ 2.) Defendant Bandit is a corporation organized and existing in the State of Michigan. It is a manufacturer of equipment known in the trade as a "horizontal grinder" which it sells to the public through agents such as Defendant Anderson.

Plaintiff asserts that Defendant Anderson was a "seller" of the 2017 Model 2680XP "Track Beast Recycler" (the "Recycler"), *id.* at 3, ¶ 12, and that Defendant Bandit, by virtue of its agency relationship with Defendant Anderson, was also a "seller" of the Recycler pursuant to 9 V.S.A. § 2451a. At all relevant times, Plaintiff alleges that Defendants' representatives were acting as agents for their respective employers, were acting with authority from their employers, and were acting within the scope of their respective employment.

Plaintiff contends that during the latter part of 2018 it sought to purchase a horizontal grinder for use in its business operations and, in furtherance of that objective, it used the internet to determine that Defendant Anderson was an authorized dealer of horizontal grinders manufactured by Defendant Bandit. Plaintiff allegedly used various

3

equipment manufactured by Defendant Bandit in the past and was satisfied with its quality and performance.

In or about December 2018, Plaintiff's representatives met with Defendants' representatives at Plaintiff's place of business in Colchester for a demonstration of a horizontal grinder. Plaintiff's representatives advised Defendants' representatives that Plaintiff needed a horizontal grinder of "high quality and reliability, [and] fit for heavy-duty commercial use." (Doc. 21-2 at 3, ¶ 12.) Plaintiff contends Defendants' representatives sought to convince Plaintiff to purchase the Recycler. During a demonstration of the Recycler, Defendants' representatives revealed that the Recycler was used equipment, but "stressed that it had very low hours of operation." *Id.* at 3, ¶ 13. Upon inquiry by Plaintiff's representatives, Defendants' representatives indicated that the only reason the previous owner of the Recycler had elected to trade it in was because it wanted to purchase a "larger model more suitable to meet the previous owner's business needs." *Id.* at 3, ¶ 14. Plaintiff asserts that this representation was false and that the previous owner had actually purchased replacement equipment because of the failure of the Recycler to adequately and satisfactorily perform its required operations. Plaintiff further alleges that it was unaware of the "true nature of the problems experience[d] by the previous owner" who traded in the Recycler and that if informed of those difficulties, it would not have purchased the Recycler. *Id.* at 8, ¶ 47.

"[T]o assuage any concerns of [Plaintiff] regarding suitability of the Recycler to meet [its] commercial needs," *id.* at 4, ¶ 16, Defendants' representatives allegedly orally informed Plaintiff's representatives that if Plaintiff purchased the Recycler, the purchase would be accompanied by the same warranty that accompanied a new horizontal grinder manufactured by Defendant Bandit and sold by Defendant Anderson. Plaintiff relied on that representation in purchasing the Recycler for $530,000.00.

On December 27, 2018, the purchase of the Recycler was reflected in the Agreement which states in relevant part:

TIER 2 (2 YR/3,000 HOUR ENGINE WARRANTY)

. . . .

4

WARRANTY: INCLUDED IN PRICING IS 6 MONTH FULL MACHINE

. . . .

WARRANTY.

5 YEAR OR 5000 HOUR VOLVO ENGINE WARRANTY.

(Doc. 5-2 at 2, 4, 5.)

The Agreement contains a forum selection clause that states:

**CLAIMS:** In order to [e]nsure prompt inspection by Buyer and to eliminate abuse of Equipment sold, Seller must be notified in writing stating with particularity the nonconformity of the Equipment to the express warranty, if any, given above by Seller, immediately after Buyer should have discovered such nonconformity. All claims for shortages must be made in writing within one (1) day after receipt of the Equipment by Buyer and specify with particularity the exact shortage complained of.

In no event shall Seller be responsible for claims resulting in whole or in part, directly or indirectly, from the use or abuse of nonconforming Equipment or to Equipment which has suffered abuse, misuse, neglect or accident or to any Equipment which has been repaired or altered so as to effect its performance, stability or reliability.

Failure to furnish such written claim within such prescribed period of time shall terminate all liability of Seller. Seller must be given the opportunities upon written demand to inspect the Equipment claimed to be nonconforming.

Nonconforming Equipment, except for samples, may only be returned to Seller upon receipt of Seller's written authorization to do so. All transportation costs with respect to such returns shall be paid by Buyer prior to shipment.

Buyer must demonstrate that any nonconformity alleged was solely caused by a breach by Seller of the express warranty, if any, given herein by Seller.

Any suit on any claim whatsoever brought in law or equity must be filed within one year from the date the cause of action accrues or be forever barred. **Any such suit must be brought in the United States District Court for the Western District of Pennsylvania or the Court of Common Pleas of Allegheny County, Pennsylvania.**

*Id.* at 7 (emphasis supplied). The Agreement also includes a choice of law provision:

**APPLICABLE LAW AND SEVERABILITY:** The Uniform Commercial Code and, to the extent not inconsistent therewith, other applicable law of the Commonwealth of Pennsylvania exclusive of Pennsylvania choice of

> law provisions in effect on the date of the acceptance of this offer by Buyer
> as provided herein, shall apply in interpreting the terms, conditions and
> limitations herein and on the face hereof without regard to which party
> drafted the language herein or on the face hereof, prior course of dealing,
> course of performance or usage of trade.

*Id.* at 8.

Plaintiff alleges that "[s]oon after the purchase" of the Recycler, "following its use in the ordinary course of Plaintiff's business," it experienced "serious, frequent and numerous problems" and that the Recycler is "defective and not suitable for the commercial use to which it was intended." (Doc. 21-2 at 5, ¶ 27.) The defective nature of the Recycler was allegedly made known to both Defendant Anderson and Defendant Bandit "within the [warranty] periods[,]" *id.* at 5, ¶ 28, and Plaintiff relied on assurances by Defendant Anderson's representatives that the Recycler could be repaired. Plaintiff further alleges that both Defendants attempted to repair the Recycler, Defendant Anderson in May 2020 and Defendant Bandit in September 2020, but the Recycler "continues to be defective[.]" *Id.* at 6, ¶ 34.

Plaintiff alleges three claims against Defendants: (1) breach of express warranties (Count I); (2) consumer fraud in violation of 9 V.S.A. § 2453(a) (Count II); and (3) common law fraud (Count III).

## IV. Conclusions of Law and Analysis.

### A. Whether to Sever Claims Against Defendant Anderson.

Because Section 1404(a) "authorizes the transfer only of an entire action and not of individual claims[,]" *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968), the court must determine whether severance of claims is appropriate before deciding whether to transfer or dismiss claims against Defendant Anderson pursuant to the forum selection clause. "Rule 21 of the Federal Rules of Civil Procedure provides that '[a]ny claim against a party may be severed and proceeded with separately[,]'" which allows "the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance." *Id.* (citation omitted). "The decision whether to grant a severance motion is committed to the sound discretion of the trial

court." *A & E Prods. Grp. L.P. v. The Accessory Corp.*, 2002 WL 1041321, at *1
(S.D.N.Y. May 23, 2002) (quoting *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065,
1082 (2d Cir. 1988)).

The Fifth Circuit in *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014),
considered whether to sever and transfer claims against one defendant pursuant to a
forum selection clause where the complaint also alleged claims against another defendant
not subject to the forum selection clause. In ordering the claims covered by the forum
selection clause to be severed and transferred, the Fifth Circuit followed a three-step
analysis:

> First, pursuant to *Atlantic Marine*, the private factors of the parties who
> have signed a forum agreement must, as matter of law, cut in favor of
> severance and transfer to the contracted for forum. Second, the district court
> must consider the private factors of the parties who have *not* signed a forum
> selection agreement as it would under a Rule 21 severance and section 1404
> transfer analysis. Finally, it must ask whether this preliminary weighing is
> outweighed by the judicial economy considerations of having all claims
> determined in a single lawsuit. In so determining, the district court should
> consider whether there are procedural mechanisms that can reduce the costs
> of severance, such as common pre-trial procedures, video depositions,
> stipulations, etc. Such practices could echo those used by judges in cases
> managed pursuant to multidistrict litigation statutes.

*Id.* at 681 (emphasis in original). The court finds the Fifth Circuit's analysis instructive.

Because Plaintiff is a party to the Agreement and its claims against Defendant
Anderson are subject to the forum selection clause, all private-interest factors weigh in
favor of transfer or dismissal. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of
Texas*, 571 U.S. 49, 64 (2013) ("A court . . . must deem the private-interest factors to
weigh entirely in favor of the preselected forum."). There is no evidence that transferring
Plaintiff's claims against Defendant Anderson would impair Defendant Bandit's interests
or that Defendant Bandit opposes such a transfer. Finally, although Plaintiff asserts that it
would be inefficient and inconvenient for it to litigate its claims in two separate forums, it
does not claim it is unable to do so. The judicial economy that will result if Plaintiff's
claims are litigated in a single forum is limited at this nascent stage of the proceedings.

There are, moreover, means by which pretrial discovery and proceedings can be consolidated even if they take place in separate forums. Severance is thus supported by the Fifth Circuit's factors and will not needlessly squander party or judicial resources. For the foregoing reasons, the court orders the claims against Defendant Anderson to be SEVERED.

**B.      Whether to Transfer or Dismiss Claim Claims Against Defendant Anderson Pursuant to the Forum Selection Clause in the Agreement.**

Plaintiff argues that the forum selection clause is unenforceable because it is unconscionable under Pennsylvania law. "Unconscionability is a question of law for the court." *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F. Supp. 807, 810 (E.D. Pa. 1981), *aff'd*, 676 F.2d 688 (3d Cir. 1982). "The doctrine of unconscionability has been applied in Pennsylvania as both a statutory and a common-law defense to the enforcement of an allegedly unfair contract or contractual provision." *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007). "[A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Id.* "The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively." *Id.*

In this case, Plaintiff's argument that the forum selection clause was part of a "pre-printed standardized form prepared by Defendant Anderson[,]" (Doc. 24 at 9), does not render it unconscionable because even though Plaintiff was the consumer in the transaction there is no evidence that it was in a "weaker position[.]" *Korea Wk., Inc. v. Got Cap., LLC*, 2016 WL 3049490, at *7 (E.D. Pa. May 27, 2016) (holding that "a contract is considered procedurally unconscionable if it is a contract of adhesion; one that is a 'standard form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms'"). The parties to the Agreement were both commercial businesses and under Pennsylvania law, "although it is possible, rarely will a commercial contract or term be found to be unconscionable." *Stanley A. Klopp, Inc.*, 510 F. Supp. at 810. Any argument

that Plaintiff was a smaller company and as a result Defendants had greater bargaining power will not suffice because "a bare allegation of disparate size does not necessarily warrant an inference of disparate bargaining power[]" and "[m]ere unequal bargaining power between contracting parties does not render their contracts unconscionable." *Id.* Although Plaintiff argues that the forum selection clause was in "fine print" and "buried" in the Agreement, (Doc. 24 at 9), the clause is labeled and in the same font as the other numbered paragraphs in the seven-page Agreement. Plaintiff does not allege it was deprived of an opportunity to read the Agreement before signing it or prevented from consulting legal counsel before doing so. As a result, the forum selection clause is neither procedurally nor substantively unconscionable under Pennsylvania law.

Federal courts "distinguish between the *interpretation* of a forum selection clause and the *enforceability* of the clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (emphasis in original). "The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law." *Id.* Thus, even if the forum selection clause in the Agreement is enforceable as a matter of state law, the court must apply federal law to determine if it is enforceable in federal court.

In its supplemental brief, Plaintiff contends that the court should not grant Defendant Anderson's motion to transfer or dismiss its claims pursuant to the forum selection clause citing the factors set forth in *N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). There, the Second Circuit held where there is a forum selection clause "[a] 'plaintiff's choice of forum merits no weight.'" *LVAR, L.P. v. Berm. Com. Bank Ltd.*, 649 F. App'x 25, 26 (2d Cir. 2016) (quoting *Atl. Marine*, 571 U.S. at 63). Instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. "[T]he overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' [and, as a result,] 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* (third alteration in original).

In the Second Circuit, the enforceability of a forum selection clause is governed by

9

a four-part test: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive"; (3) "whether the claims and parties involved in the suit are subject to the forum selection clause"; and (4) whether "enforcement would be unreasonable or unjust, or that the clause was invalid[.]" *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (internal quotation marks omitted). "In answering the *interpretive* questions posed by parts two and three of the four-part framework . . . [courts] normally apply the body of law selected in an otherwise valid choice-of-law clause." *Martinez*, 740 F.3d at 217-18 (emphasis in original).

Whether the forum selection clause was reasonably communicated to the party resisting enforcement is generally satisfied where the terms of the clause are "plainly printed" in the contract and the party resisting enforcement had an opportunity to review the terms. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). Plaintiff does not allege that it was deprived of an opportunity to review the Agreement before signing it. It does not plausibly assert that the terms of the forum selection clause are ambiguous or obscure. The forum selection clause is instead contained in the seven-page Agreement, is labelled as a provision governing "Claims," and is in the same font as the other provisions of the Agreement. *See Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (finding the "forum-selection clause itself [was] state[d] in clear and unambiguous language—albeit in fine print" and was therefore reasonably communicated to plaintiff) (second alteration in original) (internal quotation marks omitted) (quoting *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995)).

The court must next "decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." *Phillips*, 494 F.3d at 383 (emphasis in original). In this case, the forum selection clause unambiguously states that "[a]ny . . . suit *must* be brought in the United States District Court for the Western District of Pennsylvania or the Court of Common Pleas of Allegheny County, Pennsylvania." (Doc. 5-2 at 7) (emphasis supplied). Because the forum selection clause was reasonably communicated to Plaintiff and the language of the clause is mandatory

rather than permissive, the second factor also weighs in favor of enforceability.

Third, the court must consider "whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez*, 740 F.3d at 217 (internal quotation marks omitted). Plaintiff does not dispute that its claims against Defendant Anderson are subject to the forum selection clause, but argues that because there are overlapping claims against Defendant Bandit which is not a party to the Agreement. For this reason, the court asked the parties to address whether Defendant Bandit is subject to the forum selection clause as a part of a larger contractual relationship. *See First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Baltimore, Inc.*, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012) (holding "[i]t is widely accepted that non-signatory third-parties who are closely related to [a] contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship") (internal quotation marks omitted) (alterations in original) (quoting *Donachy v. Intrawest U.S. Holdings, Inc.*, 2011 WL 2973543, at *2 (D.N.J. July 21, 2011)).

Plaintiff alleges that both representatives of Defendant Anderson and Defendant Bandit were present at the demonstration of the horizontal grinder at Plaintiff's place of business and made false representations about it to Plaintiff. Despite Defendant Bandit's status as the manufacturer of the Recycler, however, Plaintiff does not allege any basis for a finding that the Agreement was part of a larger contractual relationship between the parties or that Defendant Bandit benefitted from the sale of the Recycler. As Defendant Bandit points out, the Agreement was for the sale of a *used* horizontal grinder on Defendant Anderson's pre-printed form and it "did not receive a dime." (Doc. 34 at 3.) Without more, the court cannot apply the "closely related doctrine" and enforce the forum selection clause against Defendant Bandit. *See Vinci v. VF Outdoor, LLC*, 2018 WL 3360756, at *4 (D. Vt. July 10, 2018) (internal quotation marks omitted) (holding that "[d]istrict courts applying the 'closely related' doctrine in the Second Circuit have focused on whether enforcement of a forum selection clause was 'foreseeable' to the non-signatory plaintiff").

As the fourth and final factor to be considered, Plaintiff "can overcome th[e]

11

presumption" of validity "only by . . . making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217 (internal quotation marks and citations omitted). In *Atlantic Marine*, the Supreme Court held that parties who agree to a forum selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." 571 U.S. at 64.[2]

Citing the VCPA, Plaintiff argues that Vermont, as a matter of public policy, has a strong interest in protecting its citizens from deceptive acts. However, "[i]f the existence of a consumer protection statute were sufficient to negate a forum selection clause, forum selection clauses would be frequently unenforceable as opposed to enjoying a presumption of enforceability." *Williams v. Holiday Inn Club Vacations*, 2020 WL 6086647, at \*8 (D. Vt. Mar. 10, 2020). Although Plaintiff cites 9 V.S.A. § 2461(b) as stating "[a]ny language, written or oral, used by a seller or solicitor, that attempts to exclude or modify recovery of the penalty . . . shall be unenforceable[,]" a requirement that Plaintiff litigate in the courts designated by the forum selection clause does not preclude Plaintiff's recovery of a potential penalty under the VCPA. Because Plaintiff fails to demonstrate that enforcement of the forum selection clause would be unreasonable or unjust, Plaintiff's "private-interest factors[,]" *Atl. Marine*, 571 U.S. at 64, do not render the forum selection clause unenforceable. *See Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 434-35 (E.D.N.Y. 2014) (citations omitted) ("[T]he efficiency

---

[2] The Second Circuit has identified only limited circumstances in which a forum selection clause is unenforceable:

> We decline to enforce a forum selection clause under *Bremen* if: "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum" in which suit is brought; "or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."

*Martinez v. Bloomberg LP*, 740 F.3d 211, 227-28 (2d Cir. 2014) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 378 (2d Cir. 2007)).

and economy achieved by trying interrelated claims in one forum should not trump the forum-selection clauses agreed to by [the parties]" and the "efficiency and economy that could be achieved by a single trial would largely inure to [plaintiff's] benefit—precisely what the Supreme Court has counseled is not a relevant consideration.").

The forum selection clause is enforceable and requires Plaintiff to file suit against Defendant Anderson in the designated Pennsylvania courts. Claims against Defendant Anderson must therefore be DISMISSED. *See KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 389 (S.D.N.Y. 2011) (holding that courts "typically will dismiss rather than transfer a case where an applicable forum selection clause allows a plaintiff a choice of more than one permissible forum"); *Weingard v. Telepathy, Inc.*, 2005 WL 2990645, at *6 (S.D.N.Y. Nov. 7, 2005) (observing that "[c]ourts in this district have dismissed cases involving clauses that permit suit in both federal and state courts of a foreign jurisdiction").

## C. Whether to Dismiss Claims Against Defendant Bandit for Lack of Personal Jurisdiction.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Until an evidentiary hearing is held, . . . the plaintiff need make only a prima facie showing that jurisdiction exists[.]" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). "In evaluating whether the requisite showing has been made, [the court] construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiff[]." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *In*

*re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, [the court] look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)).

In Vermont, a court may exercise personal jurisdiction over a non-resident defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220 (internal quotation marks omitted); *see also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("Vermont's long-arm statute[] . . . reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.") (internal quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *see also N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386 (Vt. 1990) (providing that "once the court determines that a nonresident defendant has purposefully established minimum contacts within the forum State, several factors must be considered to ensure that exercising personal jurisdiction over the defendant is reasonable") (citation and internal quotation marks omitted).

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks*, 714 F.3d at 673. Specific jurisdiction "exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts

14

with the forum[.]" *Id.* at 673-74 (alteration and internal quotation marks omitted). In contrast, general jurisdiction "is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* at 674 (alteration and internal quotation marks omitted). "A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the 'quality and nature[]' . . . of the defendant's contacts with the forum state under a totality of the circumstances test[.]" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

A corporation is subject to general jurisdiction where "'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). "[T]he general jurisdiction inquiry 'is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic,'" but rather "'whether that corporation's affiliations with the State are *so* continuous and systematic *as to render it essentially at home* in the forum.'" *Brown*, 814 F.3d at 627 (emphasis in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014)).

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases . . . for general jurisdiction." *Daimler*, 571 U.S. at 137 (alterations and internal quotation marks omitted). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "In practice, this should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the nerve center.[]" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (citing *Hertz*, 559 U.S. at 93) (internal quotation marks omitted).

As the Second Circuit has observed:

15

> [I]n assessing the extent of a corporation's contacts in a state for general
> jurisdiction purposes, we must assess the company's local activity not in
> isolation, but *in the context of the company's overall activity*: the general
> jurisdiction inquiry "does not focus solely on the magnitude of the
> defendant's in-state contacts," but "calls for an appraisal of a corporation's
> activities in their entirety, nationwide and worldwide."

*Brown*, 814 F.3d at 629 (emphasis in original) (quoting *Daimler*, 571 U.S. at 139 n.20).

"Only in the 'exceptional' case will another jurisdiction be entitled to exercise such

sweeping powers as the use of its adjudicatory authority to decide matters unrelated to its

citizens or to affairs within its borders." *Id.* at 627 (quoting *Daimler*, 571 U.S. at 139

n.19).

Neither of the "paradigm bases" of general jurisdiction exists in this case.

Defendant Bandit is incorporated and has its principal place of business in Michigan.

This is also not an "exceptional" case. *See Brown*, 814 F.3d at 627 (holding that "except

in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at

home' only where it is incorporated or maintains its principal place of business"). Indeed,

there is no evidence that Defendant Bandit's contacts with Vermont are any more

significant than its contacts with any other state in which it has an authorized dealer. *See*

*Daimler*, 571 U.S. at 139 n.20 (finding that "[a] corporation that operates in many places

can scarcely be deemed at home in all of them"). For this reason, the court cannot

exercise general jurisdiction over Defendant Bandit consistent with the Due Process

Clause.

Defendant Bandit contends that this court lacks specific jurisdiction because

Plaintiff's claims do not arise out of its contacts with Vermont. "[A] State may authorize

its courts to exercise [specific] personal jurisdiction over an out-of-state defendant if the

defendant has 'certain minimum contacts with [the State] such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Goodyear*, 564 U.S. at 923 (third alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S.

at 316). "For the purpose of establishing specific personal jurisdiction, the necessary fair

warning requirement is satisfied if the defendant has purposefully directed his activities at

residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks*, 714 F.3d at 674 (internal quotation marks omitted); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (holding that in order for a court to exercise "case-linked" or specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum") (emphasis, internal quotation marks, and alterations omitted). There must be "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

Plaintiff alleges that Defendant Bandit "is in the business of manufacturing, among other items, equipment known in the trade as 'horizontal grinder' which it sells to the public through agents such as Anderson." (Doc. 21-2 at 2, ¶ 3.) Plaintiff further contends that Defendant Bandit's representatives met with Plaintiff's representatives in Colchester, Vermont for a demonstration of a horizontal grinder Defendant Bandit manufactured. During that demonstration, Defendant Bandit's representatives allegedly made false representations to Plaintiff upon which Plaintiff reasonably relied to its detriment. Although Plaintiff alleges only one contact between Defendant Bandit and Vermont, "even a single act can support jurisdiction" so long as "it creates a substantial connection with the forum" based on the "nature and quality and the circumstances of [its] commission[.]" *Burger King*, 471 U.S. at 475 n.18 (internal quotation marks omitted); *see also Goodyear*, 564 U.S. at 924 (holding a court examines "whether there was *some act* by which the defendant purposefully avail[ed] itself") (alteration in original) (emphasis supplied) (internal quotation marks omitted) (quoting *Hanson*, 357

17

U.S. at 253). Moreover, if the single act alleged is an intentional tort that gives rise to the plaintiff's cause of action, that tort alone "may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008); *see also Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) (finding that a single phone call with the forum state constituted sufficient minimum contacts because the defendants allegedly "intentionally defrauded" the plaintiff in that communication). Here, Plaintiff alleges an intentional tort claim that sounds in fraud as well as a violation of the VCPA.

Defendant Bandit's argument that because the Recycler was designed and manufactured out-of-state and brought in by a third party, there is no specific jurisdiction, is of no avail. The Supreme Court has held: "[a]s in *World-Wide Volkswagen*, the Court [in *Daimler*] did not limit jurisdiction to where the [product] was designed, manufactured, or first sold." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). Although Defendant Bandit is correct that a third party's contacts with the forum state do not confer specific jurisdiction,[3] Plaintiff alleges that Defendant Bandit's representatives intentionally made fraudulent representations in Vermont such that it would not be unreasonable to expect Defendant Bandit to litigate a claim arising from those representations in a Vermont court. Plaintiff's claims arise directly out of Defendant Bandit's alleged misrepresentations and constitute sufficient minimum contacts for the exercise of specific jurisdiction.

Having concluded that "minimum contacts" exist for specific jurisdiction, the court turns to whether the exercise of personal jurisdiction over Defendant Bandit comports with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326

---

[3] *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) (holding "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (concluding that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").

U.S. at 316 (internal quotation marks omitted). In making this determination, the court evaluates:

> [1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King*, 471 U.S. at 477 (internal quotation marks omitted). "The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'" *Bank Brussels Lambert*, 305 F.3d at 129.

Although Defendant Bandit is a Michigan company and contends that "primary decisions" about the "design and development" of the Recycler were made in Michigan, (Doc. 20-2 at 2, ¶ 4), Plaintiff's claims do not turn on Defendant Bandit's design decisions, but instead on the alleged misrepresentations made by Defendant Bandit's representatives in Vermont. Defendant Bandit's employees may need to be present in Vermont for trial but that burden is eased by "the conveniences of modern communication and transportation[.]" *Licci*, 732 F.3d at 174 (quoting *Metro. Life Ins. Co.*, 84 F.3d at 574); *see also Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) ("In light of our holding that [the plaintiff] has made a threshold showing of minimum contacts at the first stage of the inquiry, . . . [the defendant's] generalized complaints of inconvenience arising from having to defend himself from suit in New York do not add up to a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") (internal quotation marks and citation omitted).

Because Plaintiff is a Vermont company and the alleged harm occurred here, the remaining fairness factors weigh in favor of finding personal jurisdiction. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984) (holding "it is beyond dispute that [Vermont] has a significant interest in redressing injuries that actually occur within the

State"); *Cabot Hosiery Mills, Inc. v. 7mesh Indus., Inc.*, 2016 WL 9526678, at *5 (D. Vt. June 8, 2016) ("[T]he plaintiff's choice of forum is the best indicator of [his] own convenience[.]") (citation and internal quotation marks omitted); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 245 (2d Cir. 1999) (finding the exercise of jurisdiction in New York proper where "the allegedly defective machine is located in New York, the site of the accident"). The Recycler, Plaintiff's witnesses, and Defendant Anderson's representatives are all located in Vermont where the bulk of discovery will take place. Although Plaintiff's claims against Defendant Anderson will be litigated in Pennsylvania and although there is a potential for inconsistent results, these considerations do not render personal jurisdiction in Vermont unfair.

Because the exercise of specific personal jurisdiction over Defendant Bandit in Vermont comports with the Due Process Clause and Vermont's long-arm statute, Defendant Bandit's motion to dismiss for lack of personal jurisdiction is DENIED.

### D.    Whether to Dismiss Claims Against Defendant Bandit.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To determine whether this standard is satisfied, the court employs a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court "must accept as true all of the [factual] allegations contained in a complaint" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, do not suffice." *Iqbal*, 556 U.S. at 678. Second, the court analyzes whether the complaint's "'well-pleaded factual allegations' . . . 'plausibly give rise to an entitlement to relief.'" *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 679). The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail. *Christiansen v.*

*Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

> ### 1. Whether Plaintiff Plausibly Pleads Breach of Express Warranty Against Defendant Bandit.

Defendant Bandit moves to dismiss Count I for breach of express warranty,

asserting that it is based on the allegations that both Defendants sold the Recycler to

Plaintiff whereas it is allegedly uncontested that Defendant Anderson was the sole seller

of the Recycler and the only other party to the Agreement. Defendant Bandit asserts that

Plaintiff's allegation that Defendant Anderson was Defendant Bandit's "agent" is

conclusory.

Under Vermont law, an express warranty is created under the following

circumstances:

> (a) Any affirmation of fact or promise made by the seller to the buyer
> which relates to the goods and becomes part of the basis of the bargain
> creates an express warranty that the goods shall conform to the affirmation
> or promise [;] (b) [a]ny description of the goods which is made part of the
> basis of the bargain creates an express warranty that the goods shall
> conform to the description [;] (c) [a]ny sample or model which is made part
> of the basis of the bargain creates an express warranty that the whole of the
> goods shall conform to the sample or model.

9A V.S.A. § 2-313(1).

Defendant Bandit's argument that it was not a "seller" of the Recycler, as defined

by 9A V.S.A. § 2-103, is essentially a lack of privity defense. However, privity of

contract is not required for every breach of express warranty claim.[4] Official commentary

to the Vermont Uniform Commercial Code provides that:

> Although . . . section [2-313] is limited in its scope and direct purpose to
> warranties made by the seller to the buyer as part of a contract for sale, the

---

[4]     [P]rivity—"that is, a contractual relationship between the parties"—does not
appear to be a prerequisite to bringing a breach-of-express-warranty claim. *See
Mainline Tractor & Equip. Co., Inc. v. Nutrite Co.*, 937 F. Supp. 1095, 1105,
1106, 1106 n.9 (D. Vt. 1996) (describing case law surrounding breach of express
warranty and abandonment of privity requirement). Also, express warranties can
be made through oral representations. 1 White, Summers & Hillman, *Uniform
Commercial Code* § 10.11 (6th ed.).

*Centrella v. Ritz-Craft Corp. of Pa., Inc.*, 2016 WL 4444759, at *9 (D. Vt. Aug. 23, 2016).

> warranty sections of this Article are not designed in any way to disturb
> those lines of case law growth which have recognized that warranties need
> not be confined either to sales contracts or to the direct parties to such a
> contract. . . . The provisions of Section 2-318 on third party beneficiaries
> expressly recognize this case law development within one particular area.
> Beyond that, the matter is left to the case law with the intention that the
> policies of this Act may offer useful guidance in dealing with further cases
> as they arise.

9A V.S.A. § 2-313 cmt. 2. "[T]he Vermont Supreme Court has dispensed with privity when . . . an express warranty made directly from the defendant to the plaintiff is present." *Vt. Plastics, Inc. v. Brine, Inc.*, 824 F. Supp. 444, 453 (D. Vt. 1993), *aff'd*, 79 F.3d 272 (2d Cir. 1996).

Under Vermont law, the standard for evaluating an express warranty is an objective one. *See* 9A V.S.A. § 2-313, cmt. 8 (stating to determine whether a warranty is created absent formal language such as "warrant" or "guarantee[,]" "the basic question remains the same: What statements of the seller have in the circumstances and in objective judgment become part of the basis of the bargain?"). "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." 9A V.S.A. § 2-313(2).

Plaintiff alleges that Defendants "stressed" that the Recycler had low hours of operation, that Plaintiff would receive the same warranty that it would if it were new, and urged Plaintiff to purchase the Recycler for Plaintiff's intended "heavy-duty commercial use." (Doc. 21-2 at 3, ¶¶ 12-13.) Plaintiff alleges that the Recycler was defective, that Defendant Bandit sought to repair it pursuant to the warranty set forth in the Agreement but failed to do so, and the Recycler remains defective and not suitable for its intended use. Because Plaintiff plausibly alleges the essential elements of a breach of express warranty claim, Defendant Bandit's motion to dismiss that claim (Count I) is DENIED.

### 2. Whether Plaintiff Pleads Common Law Fraud Against Defendant Bandit with Particularity.

Defendant Bandit argues that Plaintiff's common law fraud claim fails because it does not allege the essential elements of that claim with particularity. To assert common law fraud claim under Vermont law, a plaintiff must plead with particularity that a

defendant made an: "(1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party act[ed] in reliance on that fact; and (5) is thereby harmed." *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 13, 200 Vt. 465, 472, 133 A.3d 836, 842 (internal quotation marks omitted) (alterations in original) (quoting *Estate of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401, 35 A.3d 950). "Failure to prove any one of the five elements defeats the fraud claim." *Id.*

Plaintiff's common law fraud claim must also satisfy the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) which requires a claimant to "plead the circumstances that allegedly constitute fraud 'with particularity,'" *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014), although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "In essence, Rule 9(b) places two further burdens" on a plaintiff alleging fraud; the "first goes to the pleading of the circumstances of the fraud, [and] the second to the pleading of the defendant's mental state." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Although "mental states may be pleaded 'generally,' [the plaintiff] must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)).

Plaintiff alleges Defendants' representatives made false representations "[b]y their express statements to Plaintiff that the only reason [for] the previous owner['s dissatisfaction with] the Recycler horizontal grinder was its desire to upgrade its equipment[.]" (Doc. 21-2 at 7, ¶ 39.) Plaintiff does not identify who made this statement and it is not plausible that it was made on each Defendant's behalf without facts demonstrating that this information was known to both of them. *See Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 73, 238 A.3d 608, 636 (2020) (holding that a plaintiff "may not lump separate defendants together in vague and collective fraud allegations" but must describe the nature of each defendant's "alleged participation in the fraud") (internal quotation marks omitted) (citing *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 247 (S.D.N.Y. 2011)); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247

23

(2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").[5] With regard to the harm it suffered, Plaintiff asserts only that it "experienced serious, frequent and numerous problems of operation" with the Recycler. (Doc. 21-2 at 4, ¶ 16; 5, ¶ 27.) It does not allege the manner in which it was deficient or why it was not fit for its intended use. Because fraud must be pled with particularity, and because Plaintiff fails to identify Defendant Bandit's specific representations, why they were false, and how Plaintiff was harmed, Defendant Bandit's motion to dismiss Plaintiff's common law fraud claim (Count III) is GRANTED.

### 3. Whether Plaintiff Plausibly Pleads a VCPA Claim Against Defendant Bandit.

In arguing for dismissal of Plaintiff's VCPA claim, Defendant Bandit renews its argument that it is not the "seller" of the Recycler and Defendant Anderson was not its "agent." Defendant Bandit further argues that Plaintiff has not plead with particularity each element of its VCPA claim.

As a preliminary matter, even though Plaintiff's VCPA claim sounds in fraud, courts in Vermont have determined that the heightened pleading standard under Fed. R. Civ. P. 9(b) does not apply to claims brought thereunder. *See Whitney v. Nature's Way Pest Control, Inc.*, 2016 WL 3683525, at *3 (D. Vt. July 6, 2016) (concluding that the VCPA did not require pleading with particularity because "the mere use of the word 'fraud' in a statute does not mean that heightened standards of specificity are required"); *Poulin v. Ford Motor Co.*, 513 A.2d 1168, 1172 (Vt. 1986) ("The purpose of our

---

[5] Although "[t]he group pleading doctrine [was] developed in consequence of the rigors of Rule 9(b), which requires that averments of fraud be made with particularity[,]" "[a] plaintiff may invoke the group pleading doctrine against a defendant only if the plaintiff has alleged facts indicating that the defendant was a corporate insider or affiliate with direct involvement in the daily affairs of the company." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 438, 440-41 (S.D.N.Y. 2005). Because Defendants in this case are both corporations, Plaintiff has not properly invoked the group pleading doctrine.

Consumer Fraud Act[6] is to protect consumers by adding 'a claim for relief that is easier to establish than is common law fraud. To require the higher degree of proof would frustrate the legislative intent.'") (citation omitted) (footnote supplied); *Nashef v. AADCO Med., Inc.*, 947 F. Supp. 2d 413, 424 (D. Vt. 2013) (holding that "[n]othing in the plain language of the [VCPA], its legislative history, or the case law interpreting supports a conclusion that a heightened pleading standard must be satisfied. Such a requirement would be at odds with the remedial nature of the [VCPA] and the ordinary consumers that it is intended to protect").

The VCPA prohibits "unfair or deceptive acts or practices in commerce[.]" 9 V.S.A. § 2453(a). To plead a plausible claim for relief thereunder, Plaintiff must allege that it "'contract[ed] for goods or services in reliance upon false or fraudulent representations or practices prohibited by [§] 2453" or "sustain[ed] damages or injury as a result of any false or fraudulent representations or practices prohibited by [§] 2453[.]'" *Glassford v. Dufresne & Assocs., P.C.*, 2015 VT 77, ¶ 30, 199 Vt. 422, 438, 124 A.3d 822, 833 (quoting 9 V.S.A. § 2461(b)).

A deceptive act or practice is: (1) "a representation, practice[,] or omission likely to mislead" a consumer; (2) that the consumer "interpreted . . . reasonably under the circumstances"; and (3) that has "material" misleading effects which are "'likely to affect [the consumer's] conduct or decision with regard to a product.'" *Vastano v. Killington Valley Real Est.*, 2007 VT 33, ¶ 8, 182 Vt. 550, 551, 929 A.2d 720, 722 (quoting *Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 15, 177 Vt. 90, 97, 858 A.2d 238, 244). Materiality is "'generally measured by an objective standard, premised on what a reasonable person would regard as important in making a decision.'" *PH W. Dover Prop., LLC v. Lalancette Eng'rs*, 2015 VT 48, ¶ 11, 199 Vt. 1, 5, 120 A.3d 1135, 1138 (quoting *Vastano*, 2007 VT 33, at ¶ 9, 182 Vt. at 551, 929 A.2d at 722). "Misrepresentations involving facts are actionable while those involving opinions are not." *Otis-Wisher v. Fletcher Allen Health Care, Inc.*, 951 F. Supp. 2d 592, 603 (D. Vt. 2013), *aff'd sub nom. Otis-Wisher v.*

---

[6] "The [V]CPA was formerly known as the Vermont Consumer Fraud Act." *Centrella v. Ritz-Craft Corp. of Pa., Inc.*, 2017 WL 3720757, at *3 (D. Vt. June 28, 2017).

*Medtronic, Inc.*, 616 F. App'x 433 (2d Cir. 2015).

Plaintiff plausibly pleads the essential elements of its VCPA claim by alleging that "[i]f informed of the difficulties experienced by the previous owner of the Recycler, [Plaintiff] would not have purchased the equipment[,]" (Doc. 21-2 at 4, ¶ 18), and its allegation that Defendant Bandit participated in false representations upon which Plaintiff relied in making its purchasing decision. *See Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465, 468, 853 A.2d 40, 43 ("[A] consumer establishes the first element [of a VCPA claim] if she proves that the representation or omission had the tendency or capacity to deceive a reasonable consumer."). Although Plaintiff's agency allegations are conclusory as currently pled, Plaintiff claims that Defendant Bandit's own representatives made false statements and thus Plaintiff's VCPA claim does not rest on Defendant Bandit acting as Defendant Anderson's agent or vice versa.

Defendant need not be in privity of contract with Plaintiff in order for Plaintiff to assert a VCPA claim. *See Glassford, P.C.*, 2015 VT 77, at ¶ 31, 199 Vt. at 438, 124 A.3d at 833 (observing that "we have explicitly held that the availability of [V]CPA remedies does not depend on the presence of privity between the plaintiff and defendant. Indeed, the Legislature's inclusion of 'other violator' in the list of possible defendants is a major reason why it could not have intended to impose a privity requirement") (citation omitted). Because Plaintiff plausibly asserts a claim under the VCPA based on Defendant Bandit's alleged false representations, Defendant's motion to dismiss Plaintiff's VCPA claim (Count III) is DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion for leave to amend. The court ORDERS claims against Defendant Anderson severed and GRANTS Defendant Anderson's motion to dismiss those claims without prejudice pursuant to the forum selection clause. (Doc. 5.) The court GRANTS IN PART and DENIES IN PART Defendant Bandit's motion to dismiss the Amended Complaint (Docs. 20 & 21), dismissing Plaintiff's claim of common law fraud (Count III) and denying dismissal on

all other grounds.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _31st_ day of August, 2021.

Christina Reiss, District Judge
United States District Court